IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANA E. MCCRACKEN, | : | |
| Plaintiff, | : | NO. 1:15-cv-1836 |
| | : | |
| v. | : | |
| | : | (Conner, C.J.) |
| CAROLYN W. COLVIN, | : | (Saporito, M.J.) |
| Acting Commissioner of | : | |
| Social Security, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

This is an action brought under 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference), seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying Diana Elizabeth McCracken's application for Supplemental Security Income under Title XVI of the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for the preparation of the report and recommended disposition pursuant to the provisions of 28 U.S.C. §636(b) and Rule 72(b) of the Federal Rules of Civil Procedure.

For the reasons stated herein, we respectfully recommend that the decision of the Commissioner be **AFFIRMED**.

## I.   BACKGROUND AND PROCEDURAL HISTORY

The Plaintiff, Diana Elizabeth McCracken ("McCracken"), is an adult individual, born in 1974. McCracken was thirty-six years of age at the time of her alleged onset of disability, July 9, 2011. (Tr. 90).

McCracken's age at the onset date makes her a "younger person" under the Commissioner's regulations, whose age generally does not affect her ability to adjust to other work. See 20 C.F.R. §416.963.  McCracken protectively filed an initial application for benefits on May 11, 2010. She was thirty-four years of age at the time of her originally alleged onset of disability, March 1, 2009.  Her claim was denied on July 26, 2010. McCracken filed a timely written request for a hearing on August 12, 2010. A hearing was held on the matter on July 7, 2011, in Harrisburg before Administrative Law Judge Theodore Burock. McCracken appeared and testified at the hearing.  She was represented by her attorney, Carolyn M. Anner, throughout the proceeding. Her claim was denied on July 8, 2011. (Ex. B1A)

McCracken again protectively filed a new application for benefits on January 2, 2013, alleging disability as of July 9, 2011. She alleged

impairments due to degenerative disc disease of the cervical spine, depression, anxiety, bipolar, and schizophrenia. (Ex. B1E, at 195 ). She alleges these impairments are disabling. Her claim was initially denied on March 12, 2013. McCracken filed a timely written request for a hearing on March 21, 2013. A hearing was held on the matter on June 20, 2014, in Harrisburg before Administrative Law Judge Daniel Myers (the "ALJ"). McCracken appeared and testified at the hearing. She was represented by her attorney, Carolyn M. Anner, throughout the proceeding. Her claim was denied again on July 3, 2014. On July 15, 2014, McCracken filed a timely Request for Review with the Appeals Council. (Tr. 5-6). The Appeals Council denied McCracken's request for review on August 18, 2015, and concluded that there was no reason under the rules to review the ALJ's decision. (Tr. 1-4). McCracken then timely filed a complaint in this court on September 21, 2015. (Doc. 1). The Commissioner's timely answer to the complaint was filed November 23, 2015. (Doc. 8).

McCracken alleges disability primarily for cervical issues. She has a history of diverticulitis and a history of infection and sepsis. She has anxiety, depression, and has had inpatient psychiatric hospitalizations.

(Tr. 43). She also has a history of depression, anxiety, bipolar disorder, migraine headaches, post traumatic stress disorder, asthma, and schizophreniza. (Tr. 15).

McCracken resides with her four children in the Middle District of Pennsylvania, who at the time of hearing were ages 21, 17, 12, and 6. Her 17 year old daughter has been diagnosed with ADHD. Her income consists of child support and disability benefits for her 17 year old daughter.   Her highest level of education is tenth grade and she has a GED. (Tr. 69). McCracken has no past relevant work. (Tr. 43).

McCracken claims that she has difficulty trusting men. She has no problem spending time with others, and she has no problem getting along with family, friends, and neighbors. She stated she shops in stores, although she feels that in a work environment, where she could potentially have a male supervisor, she does not feel she could perform her duties. (Tr. 46,47).

 She stated that her "brain" prevents her from being able to work. She stated that she is constantly thinking about her past and is unable to focus. (Tr. 48-49).  Although McCracken states that at times, she thinks

of the past and has a hard time focusing, she uses a computer, pays bills, and finishes what she starts. She stated that looking down at the keyboard puts a strain on the back of her neck. Prior to surgery, she had tingling in her thumb and forefinger but since the surgery that is corrected. (Tr. 50-51).

On August 23, 2013, McCracken was admitted to the emergency room at Mount Nittany Medical Center for pain in her neck, arms, and shoulders. (Ex. B7F, at 4). She had numbness and tingling. The treating physician-surgeon, Gregory Bailey, D.O., noted that on August 26, 2013 an MRI revealed a large disc herniation. (Ex. B7F, at 9). On August 28, 2013, Dr. Bailey performed an anterior cervical discectomy and fusion of C4-C5, C5-C6. (Ex. B7F).   On September 10, 2013, Dr. Bailey noted that McCracken was pleased with the surgery, doing well, and was just about off all pain medications. On November 21, 2013, he observed an increase in pain in the right side of her neck coincided with the removal of the cervical collar. However, she denied pain down her arm, and denied numbness, tingling, and paresthesias. (Ex. B9F).  By November 20, 2013, McCracken stated that she has had some neck pain, but no radiating pain

down her arms (Ex. B9F, at 8). On January 9, 2014, Dr. Bailey noted that she is doing well overall. Arm symptoms resolved but she had some paracervical muscular discomfort. On February 5, 2014, Dr. Bailey's notes reflect that she continued to have some pain in her neck, but she was doing well and was back to her normal activities. At a follow up appointment on April 9, 2014, Dr. Bailey noted that McCracken had no pain to speak of at that point and that she had no restrictions other than what comfort permits. (Ex. B9F, at 2).

The ALJ notes that this is <u>not</u> consistent with McCracken's testimony wherein she stated that she has pain in her neck and left upper extremity areas. She did not feel that the surgery helped in her ability to use her upper extremities. She stated that she is unable to lift a basket of laundry from the washer to the dryer asserting that it is too heavy and causes shooting pain that radiates down her arm. (Tr. 49). Also, she stated that as a result of the surgery, she has difficultly turning her head, left and right, and up and down. (Tr. 50).

At the time of the hearing, the ALJ observed that McCracken was wearing a fusion collar around her neck. The collar emits electrodes to her

spine to fuse the bones. (Tr. 50).

McCracken was hospitalized at Lewistown Hospital from March 13, 2014, through March 17, 2014, for depression, mood swings, and suicidal threats. She was prescribed medication which had side effects of suicidal thoughts, sleepiness, and fatigue. (Ex. B12F, at 2)

She stated that she has always had suicidal thoughts. She sees her therapist, Lori Rocco, at SolutionZ twice per month for one hour. McCracken stated that her therapist feels therapy is helping her because she is opening up, but McCracken stated that therapy did not help as it just makes her remember more things that she tries to forget. (Tr. 52).

McCracken contends that she has issues with her hands and feet shaking for about a year before the hearing. She takes Klonopin which helps to calm the shaking. Also, she stated she has difficulty holding things. (Tr. 52, 53).

McCracken stated that she has trouble sleeping. She takes cat naps during the day. When she sleeps, she dreams, and she is working on this with her doctor because she does not like to dream. (Tr. 54).

McCracken stated that she does not handle stress well.  The record

notes that she has no problem with personal care for herself.  (Tr. 14). She stated that her children are very independent, they get up by themselves, and all she really does is prepare dinner. (Tr. 55).  Her oldest daughter works  outside the home for home health care. (Tr. 56).   She drives only locally and is able to prepare her own meals. (Tr. 55).

McCracken was hospitalized from October 29, 2012, through November 2, 2012, at The Meadows Psychiatric Center for suicidal ideation and a plan to overdose. Her treating physician, Sreedevi Komarneni, M.D., notes state that claimant was depressed with an anxious mood, crying spells, impaired concentration, and restless motor activity. (Ex. B1F).

The records from Lewistown Hospital show that she took two Geodon and two Clonazepam, and that she stated that she should have been dead long ago. (Ex. B12F). She also stated that the overdose was not to hurt herself, but to help her sleep. (Id.).

Dr. Komarneni's observations showed that McCracken had an adequate capacity for activities of daily living. She denied homicidal ideation and panic attacks. (Ex. B1F).  Another treating psychiatrist,

Nitrin Sheth, M.D., diagnosed McCracken as having depression and anxiety. (Ex. B4F). Dr. Sheth noted that she had anhedonia, anergia, irritability, and auditory hallucinations. (Ex. B2F). Dr. Sheth further noted that the mental status examinations showed no serious mental status abnormalities or signs of mood elevation. Dr. Sheth noted that she does not exhibit any evidence of psychosis or mania. (Ex. B2F).

McCracken stated at the hearing that she does nothing to help her children, including her five year old, but she left Lewistown Hospital after 72 hours because her children needed her. (Ex. B1F). Again, the ALJ noted that this is inconsistent with her testimony during the hearing where she stated that her children are self-sufficient. (Tr. 55).

II. Standard of Review.

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. See 42 U.S.C. § 405(g) (sentence five); id. § 1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable

amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." <u>Leslie v. Barnhart</u>, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct

application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); see also 20 C.F.R. § 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[1] that makes it impossible to do his or her previous work or

---

[1] A "physical or mental impairment" is an impairment resulting
(continued...)

any other substantial gainful activity[2] that exists in the national economy.

42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[3] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[4] and (5) whether the claimant

---

[1](...continued)
from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

[2] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 416.910.

[3] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[4] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her

(continued...)

is able to do any other work, considering his or her RFC, age, education, and work experience. Id. The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); id. § 1382c(a)(3)(H)(i); 20 C.F.R. § 416.912; Mason, 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 416.912(f); Mason, 994 F.2d at 1064.

III.   The ALJ's Decision Denying McCracken's Application for Benefits

In his decision, the ALJ proceeded through each step of the five-step sequential evaluation process.  At step one, the ALJ found that McCracken has not engaged in substantial gainful activity at any time

_____

[4](...continued)
impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. Id. § 416.945(a)(2).

from January 2, 2013, the date of application until the date of the ALJ's decision. (Tr.13).   At step two, the ALJ found that McCracken had the following severe impairments: degenerative disc disease of the cervical spine, depression, and anxiety. (Tr. 13). McCracken also alleged disability due to mental impairments, but the ALJ found that this condition was not medically determinable on the record presented. (Tr. 13). At step three, the ALJ found that McCracken did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 13).

Before proceeding to steps four and five of the sequential evaluation process, the ALJ assessed McCracken's RFC. In making this determination, the ALJ is required to assess the credibility of McCracken's subjective testimony on the subject of the intensity, persistence, and limiting effects of McCracken's impairments in accordance with the mandates of 20 C.F.R. §404.1529, and Social Security Rulings 96-4p and 96-7p.  The ALJ is also required to weigh the opinion evidence of record in accordance with the mandates of 20 C.F.R. §404.1527 and Social Security Rulings 96-2p, 96-5p, 96-6p, and 06-3p.

The record before the ALJ in this case included a diagnostic psychological evaluation by Nitin Sheth, M.D., a treating psychiatrist, who diagnosed McCracken with depression and anxiety, and noted that she has had anhedonia, anergia, irritability, and auditory hallucinations. McCracken had an inpatient psychiatric hospitalization on May 14, 2014. (Ex. B1F, B4F). The record also shows that Sreedevi Komarneni, M.D., a treating psychiatrist, stated that McCracken was hospitalized for suicidal ideation from October 29, 2012, to November 2, 2012. (Ex. B1F). At the time of hospitalization, she had a depressed and anxious mood, crying spells, impaired concentration, and restless motor activity. (Ex. B1F). The ALJ reviewed records from Lewistown Hospital that revealed that McCracken had an inpatient psychiatric hospitalization from March 13, 2014, to March 17, 2014. (Ex. B12F). Those records revealed that she took two Geodon and two Clonazepam and she stated that she should have been dead long ago. (Ex. B12F). McCracken stated that the overdose was not to kill herself just to help her sleep better. (Id.)

The ALJ assigned great weight to the opinion of Edward Jonas, PhD., a non-examining DDS psychologist (Ex. B3A) who opined that McCracken had no more than moderate limitations which was consistent

15

with the record as a whole, and which was consistent with Dr. Sheth's statement that McCracken did not exhibit significant psychosis or mania. (Ex. B3A). Also, the ALJ applied great weight to Dr. Sheth's opinion of claimant's GAF scores of 53 and above. (Ex. B2F). Dr. Sheth's mental status examinations revealed no serious mental status abnormalities. (Ex. B2F). The ALJ limited the weight given to the opinions of Dr. Komarneni and the treating mental health provider at Lewistown Hospital that her GAF scores were 50 and below. The ALJ found that these scores were not supported by the record as a whole and were not consistent with Dr. Sheth's statement that McCracken does not exhibit any evidence of significant psychosis or mania. (Ex. 14F).

The ALJ relied on testimony by a vocational expert ("VE"), Sheryl Buston, to support his analysis at steps four and five of the sequential process. At step four, the ALJ must decide whether McCracken could engage in past relevant work. Here, the ALJ determined that McCracken had no past relevant work. (Tr. 17). At step five, the ALJ considered the claimant's age, education, work experience, and RFC, and found that there are jobs which exist in significant numbers in the national economy that she can perform. The VE testified that occupations exist in

significant numbers in the national economy that McCracken could perform such as:   housekeeping, DOT #323.687-014, light, SVP 2, 1,000,000 jobs nationally;   bakery worker conveyor line, DOT # 524.687-022, light, SVP 2, 230,000 jobs nationally; and machine tender laminating, DOT #569.686-046, light, SVP 2, 300,000 jobs nationally. (Tr. 18). As a result, the ALJ found that McCracken retained the ability to perform work that exists in significant numbers in the national economy and therefore, she is not disabled under the Social Security Act. (Tr. 19).

IV.   <u>Discussion</u>

At step three of the sequential evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments that are acknowledged to be so severe as to preclude substantial gainful activity.   20 C.F.R. §416.920(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1; <u>Burnett</u>, 220 F.3d at 119.   In making this determination, the ALJ is guided by several basic principles set forth by the Social Security regulations, and case law.   First, if a claimant's impairment meets or equals one of the listed impairments, the plaintiff is considered disabled <u>per</u> <u>se</u>, and is awarded benefits.   20 C.F.R. §416.920(d); <u>Burnett</u>, 220 F.3d at 119.   However, to qualify for benefits by

showing that an impairment, or combination of impairments, is equivalent to a listed impairment, the claimant bears the burden of presenting "medical findings equivalent in severity to <u>all</u> the criteria for the one most similar impairment." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 531 (1990). <u>See also</u> 20 C.F.R. §416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. <u>Id.</u>

The Commissioner's regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §416.927(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §416.927(c).

In deciding what weight to accord to competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. §416.927(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual

become weaker." Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *2. Treating sources have the closest ties to the claimant, and therefore their opinions are generally entitled to more weight. See 20 C.F.R. §416.927(c)(2)("Generally, we give more weight to opinions from your treating sources. . ."); 20 C.F.R. §416.902 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. §416.927(c)(2); see also Soc. Sec. Ruling 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for

the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention.  20 C.F.R. §416.927(c).

Further, it is important to note that 20 C.F.R. §416.927(e) provide, that, at the ALJ and Appeals Council levels of the administrative review process, findings by nonexamining State agency medical and psychological consultants must be evaluated as expert opinion evidence by nonexamining physicians and psychologists, and these opinions must be addressed by the ALJ in his or her decision.  However, opinions by State agency consultants can be given weight "only insofar as they are supported by evidence in the case record."  Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *2.   In appropriate circumstances, opinions from nonexamining State agency  medical or psychological consultants may be entitled to greater weight than the opinions of treating or examining sources.  Id. at *3.

Furthermore, it is beyond dispute that, in a social security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  Cotter, 642 F.2d at 704. This

principle applies with particular force to the opinion of a treating physician. <u>See</u> 20 C.F.R. §416.927(c)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999)(quoting <u>Mason</u>, 994 F.2d at 1066)); <u>see also</u> <u>Morales v. Apfel</u>, 225 F.3d 310, 317 (3d Cir. 2000).

Therefore, one of the contested issues in this case is whether the claimant has an impairment or combination of impairments that meets or medically equals one of the listed impairments.

At step three of the sequential process, the ALJ must determine whether a claimant's impairments satisfy the criteria of listed impairment. <u>See</u> 20 C.F.R. §§416.920-.925. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990) (footnotes and citations omitted).

The ALJ determined that McCracken's impairments did not satisfy the criteria of any listed impairment (Tr. 28-30). In particular, the ALJ

21

found that McCracken failed to satisfy the criteria set forth at §12.04(B).

A claimant satisfies the "B" criteria of listed impairment 12.04 only if her impairment(s) result in two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. <u>See</u> 20 C.F.R. Pt.404, subpt. P, app. 1, §12.04(B). Substantial evidence supports the ALJ's determination that McCracken did not have a marked limitation in any of the first three domains, nor any episodes of decompensation lasting at least two weeks. The ALJ specifically found that McCracken had a moderate limitation in three domains. (Tr. 29). The medical evidence supported the determination that McCracken did not have a marked limitation in any domain. The ALJ gave great weight to Dr. Jonas's opinion that McCracken had no more than a moderate limitation. (Tr. 32). Dr. Jonas opined that McCracken had moderate difficulties in maintaining social functioning, but had no restriction in activities of daily living and no difficulties in maintaining concentration, persistence, or pace. (Tr. 116). The ALJ's determination is consistent with Dr. Jonas's opinion in the area of social functioning and

more restrictive in the area of daily activities, concentration, persistence, and pace. (Tr. 118). See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361-62 (3d Cir. 2011) (stating that the ALJ did not "rubber stamp" the State agency medical opinion because the ALJ added restrictions that were not in the opinion).  State agency medical sources, are "highly qualified" sources who are "experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i). The ALJ properly relied on evidence of record, which included Dr. Jonas's opinion and asserts that McCracken did not satisfy the "B" criteria of listed impairment 12.04.

The ALJ has substantial evidence to support the step-three determination where there was no treating, examining, or reviewing physician or psychologist who found that claimant showed any marked limitations. See Snelbaker v. Colvin, Civil Action No. 3:12-2151, 2014 WL 980840, at *2 (M.D. Pa. Mar. 13, 2014).

Another contested issue in this case relates to McCracken's residual capacity for light work.  A claimant's RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." Burnett, 220 F.3d at 121 (citations omitted); see also 20 C.F.R. §416.945(a)(1). In making this assessment, the ALJ must consider

all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of the sequential evaluation process. 20 C.F.R. §416.945(a)(2). The ALJ then applies this assessment at steps four and five to determine whether a claimant can work.

Where, as here, the transferability of job skills is not an issue because McCracken does not have past relevant work, and she has solely light work limitations as defined in 20 CFR §416.967(b), the ALJ will often consult a vocational expert to ascertain whether the claimant's particular limitations preclude the performance of any work by posing a series of hypothetical questions. See Soc. Sec. Ruling 85-15, 1985 WL 56857, at *3. The vocational expert then offers an opinion as to the availability of work for a particular claimant. (See id.).

The formulation of a proper hypothetical question has a dual significance in social security proceedings. First, as an evidentiary matter, it determines whether the vocational expert's opinion can be considered as substantial evidence supporting an ALJ's finding. Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) ("Where there exists in the record medically undisputed evidence of specific impairments not included in a

hypothetical question to a vocational expert, the expert's response is not considered substantial evidence."). However, more fundamentally, an erroneous or inadequate hypothetical question undermines the reliability of any residual functional capacity determination since " objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 554 n. 8 (3d Cir. 2005).

As the United States Court of Appeals for the Third Circuit has observed:

> Discussing hypothetical questions posed to vocational experts, we have said that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." <u>Podedworny</u>, 745 F.2d at 218. A hypothetical question posed to a vocational expert "must reflect <u>all</u> of a claimant's impairments." <u>Chrupcala v. Heckler</u>, 829 F.2d 1269, 1276 (3d Cir.1987) <u>(emphasis added)</u>. Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence. <u>Podedworny</u>, 745 F.2d at 218 (citing <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d

1150, 1155 (3d Cir.1983)).

<u>Burns</u>, 312 F.3d at 123.

Here, McCracken contends that the ALJ failed in determining that she has the residual functional capacity to perform light work. McCracken contends that the ALJ overemphasized high GAF scores while downplaying her lower GAF scores as "not supported by the record" which gave an inaccurate view of the actual RFC. (Doc. 10, at 9).

The ALJ has the responsibility of determining a claimant's RFC. <u>See</u> <u>Chandler</u>, 667 F.3d at 361. A claimant's RFC is the most the claimant can do despite her impairments. <u>See</u> 20 C.F.R. § 416.945(a)(1).

An individual is disabled under the Act only if she has a medically determinable impairment that "can be expected to result in death or which has lasted or can be expected to last for a continuous period of no less than twelve months." 42 U.S.C. § 1382c(a)(3)(a); <u>see also</u> 20 C.F.R. § 416.905(a). The Supreme Court explained that "[n]o one claims that the statute would permit an individual with a chronic illness—say, high blood pressure—to qualify for benefits if that illness, while itself lasting for a year, were to permit a claimant to return to work after only a week, perhaps even a day, away from the job." <u>Barnhart v. Walton</u>, 535 U.S. 212,

26

219 (2002). In other words, an ALJ must evaluate a claim in light of the claimant's usual abilities over a 12-month period.

In this case, the ALJ found that McCracken could perform a range of light work. (Tr. 30). The ALJ never suggested that McCracken did not have any physical or mental symptoms. The ALJ noted McCracken's two psychiatric hospitalizations and her anterior cervical discectomy and fusion. (Tr. 31). See Tanner v. Comm'r of Soc. Sec., 602 Fed. App'x 95, 100 (4th Cir. 2015) (stating that "[g]iven the several years that medical records often span, it is inevitable that some evidence will show signs of a claimant's improvement and other evidence will show signs of a claimant's regression."). The ALJ concluded that the evidence of record failed to show that McCracken was unable to work for any period of twelve consecutive months.

Substantial evidence supports the ALJ's RFC assessment. The ALJ relied on, among other things, Dr. Jonas's medical opinion, GAF scores consistent with the evidence of record, and the objective medical evidence. The ALJ stated that Dr. Sheth's treatment records over approximately a three year period show, "no serious mental status abnormalities, some depression but no signs of mood elevation and intact cognitive ability and

memory." (Tr. 31-32, 236, 239, 242, 248, 259-60, 262, 265, 267, 270, 273, 276, 277, 279, 282, 285, 288, 291, 294, 297, 300, 305-06, 308). See Locke v. Colvin, No. 13-1884, 2014 WL 4918422, at *17 (M.D. Pa. Sept. 30, 2014)(finding no error in the ALJ's evaluation of the claimant's mental impairments, in part, because all mental status examinations with one physician were normal).

McCracken challenges the ALJ's RFC assessment with respect to the GAF scores (Doc. 10, at 10). McCracken asserts that the ALJ "dismissed the lower scores as "not supported by the record," despite comprising a significant portion of the GAF scores of record, and without going into sufficient detail as to what parts of the record he relied upon." (Pl. Br. 10). The ALJ gave little weight to the lower GAF scores because Dr. Sheth's treatment records failed to show changes that would warrant such lower scores. See Plummer v. Apfel, 186 F.3d 422, 430-31 (3d Cir. 1999) (affirming the ALJ's decisions to give little weight to a treating source's medical opinion that was not supported by the treating sources medical records or other medical evidence). The ALJ compared the GAF scores with the underlying treatment records and accepted only those scores consistent with those records.

McCracken claims that the ALJ failed in claiming that she has no past relevant work. (Tr. 32) Although McCracken has not had any employment for approximately eight years, she possesses a GED and her previous work was unskilled. (Tr. 43, 58). As a matter of law, administrative finality would preclude McCracken's argument.  An ALJ issued a prior final decision on July 8, 2011, finding that McCracken was not disabled from her alleged onset date of May 11, 2010 through the date of the ALJ's decision. (Tr. 90-102).  Because McCracken did not appeal that decision, she cannot now suggest that her work history—much of which occurred during or before the prior final decision—shows that she was unable to work during the period considered in the current final decision.

For reasons stated, the ALJ properly determined that McCracken could perform a range of light work. In reaching this conclusion, the ALJ did not rely on any single piece of evidence as a whole. These factors, in combination, would convince a reasonable person that McCracken was not disabled. See Zirnsak, 777 F.3d at 610 (quoting Rutherford, 399 F.3d at 552).

The Court finds that the ALJ made the required specific findings of fact in determining whether McCracken met the criteria for disability.

V.       Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Commissioner's final decision denying McCracken's application for benefits  under Title XVI of the Social Security Act be AFFIRMED.

*s/ Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: August 9, 2016

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DIANA E. MCCRACKEN,                :
            Plaintiff,             :        NO. 1:15-cv-1836
                                   :
      v.                           :
                                   :        (Conner, C.J.)
CAROLYN W. COLVIN,                 :        (Saporito, M.J.)
Acting Commissioner of            :
Social Security,                   :
            Defendant.             :

## NOTICE

Notice is hereby given that the undersigned has entered the foregoing Report and Recommendation dated August 9, 2016. Any party may obtain a review of this Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights

 s/ Joseph F. Saporito, Jr. 
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: August 9, 2016